IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| Annette Mackey Bartle, on behalf of herself and other members of the class,<br><br>    Plaintiff,<br><br>v.<br><br>TD Ameritrade Holdings Corp.,<br><br>    Defendant. | No. 20-00166-CV-W-BP |

**UNOPPOSED MOTION FOR PRELIMINARY SETTLEMENT APPROVAL AND SUGGESTIONS IN SUPPORT THEREOF**

                                              **THE LAW OFFICE OF JARED A. ROSE**

                                                By: /s/ Jared A. Rose
                                                Jared A. Rose, MO Bar #60128
                                                919 West 47th Street
                                                Kansas City, Missouri 64112
                                                Phone:  (816) 221-4335
                                                Fax:     (816) 873-5406
                                                jared@roselawkc.com

                                                *Attorney for Plaintiff*

**TABLE OF CONTENTS**

I. Procedural History and Settlement Overview .................................................. 3

II. The Proposed Settlement ................................................................................ 6

III. Legal Standard ................................................................................................ 7

IV. The Settlement Satisfies Rule 23(e) ................................................................ 9

    a. The Class Representative and Class Counsel have adequately represented the Class ............................................................................................... 10

    b. The settlement was negotiated at arm's length ........................................ 10

    c. The relief provided for the Class is adequate .......................................... 11

        1. The costs, risks, and delay of trial and appeal ................................... 11

        2. The effectiveness of the proposed method of distributing relief to the class ........................................................................................... 12

        3. The proposed attorneys' fees ............................................................ 13

        4. The proposal treats Class Members equitably .................................. 15

    d. The experience and views of counsel ...................................................... 17

V. Conclusion ..................................................................................................... 17

Plaintiff respectfully presents the Court with an agreement to settle the Class claims against Defendant on a nationwide, class basis.[1] The Settlement Agreement (attached hereto as Exhibit 1) is the product of well-informed, arm's-length settlement negotiations conducted after more than 23 months of litigation. The Settlement provides a fair and reasonable recovery to the Class and, if approved, will deliver tangible and immediate benefits to the Class. It is a good result for the Class, and is fair, reasonable, and adequate, particularly considering the risks of continued litigation. The Court should grant preliminary approval.

## I. Procedural History and Settlement Overview

Plaintiff Annette Bartle ("Bartle" or "Plaintiff") filed suit against Defendant in Missouri state court on January 23, 2020. Plaintiff alleged that Scottrade, Inc. ("Scottrade") violated the terms of its Brokerage Account Agreement, which provided:

> All securities and other property now or hereafter held, carried or maintained by us in or for your Account may, from time to time without notice to you, be pledged, repledged, hypothecated or re-hypothecated by us, either separately or in common with other securities and other property. The values received may be greater than the amount you owe us. Any losses, gains or compensation resulting from these activities will not accrue to your brokerage Account.

Plaintiff alleged that this paragraph promised account owners that they would not incur any losses from Scottrade's hypothecation activities. She alleged that because of Scottrade's activities, accountholders did not receive qualified dividends to which they would have been entitled, but instead received less valuable substitute payments. She sued TD Ameritrade Holdings Corp., which goes by the legal name TD Ameritrade Holding Corporation ("Defendant") and which acquired Scottrade in late 2017, for breach of contract, unjust enrichment, and declaratory judgment.

---

[1] The definitions in the Settlement Agreement are hereby incorporated as though fully set forth here, and capitalized terms shall have the meanings attributed to them in the Settlement Agreement.

Defendant removed the case to federal court and the parties engaged in extensive briefing, including two dispositive motions. On April 7, 2020, Defendant moved for dismissal of Plaintiff's claims, arguing that the claims were preempted by the Securities Litigation Uniform Standards Act (SLUSA) and that Scottrade's actions did not breach the Brokerage Account Agreement and did not cause a loss to accrue to client accounts. Plaintiff opposed the motion and it was denied on May 18, 2020. On July 17, 2020, Defendant filed a Motion for Judgment on the Pleadings, arguing that Plaintiff's claims were time-barred, and also filed a motion to join Annette Bartle's husband, who was the joint account holder, as a plaintiff. Plaintiff filed oppositions and both motions were denied. On November 12, 2020, Defendant asked the Court to reconsider its ruling on the motion to dismiss. Plaintiff opposed the motion, and it was denied.

The parties have also engaged in extensive discovery. From June through August of 2020, Plaintiff served three sets of requests for production of documents, two sets of interrogatories, and two sets of requests for admission. Plaintiff also responded to requests for production and interrogatories served upon her. The parties exchanged thousands of pages of documents during the discovery process. Plaintiff deposed Defendant's corporate representative on July 23, 2020. Plaintiff's counsel traveled to Chicago to depose a former Scottrade employee on October 5, 2020. Plaintiff deposed another former Scottrade employee via Zoom on October 8, 2020. Plaintiff and her husband were deposed on November 20 and 23, 2020.

The parties were assigned to the Court's mediation and assessment program and engaged in the Court-required mediation on August 31, 2020, using an experienced mediator, Tom Bender, but were unable to resolve the case.

The class certification process in this case involved hundreds of pages of briefing and exhibits filed over the course of more than six months. Plaintiff filed her first motion for

4

class certification on November 16, 2020, Defendant filed its opposition on December 14, 2020, and Plaintiff filed a reply in support of the motion on January 15, 2021. The District Court denied the motion for class certification without prejudice on April 7, 2021, allowing Plaintiff an opportunity to refile. Plaintiff filed a renewed motion for class certification on May 19, 2021, which Defendant opposed on June 21, 2021. Plaintiff filed a reply in support of the renewed motion for class certification on July 2, 2021.

The Court granted Plaintiff's motion for class certification on September 15, 2021. The Court certified a class consisting of: "All persons and entities who owned a Scottrade brokerage account and received a substitute payment in lieu of qualified dividends during the time period January 23, 2010 through February 26, 2018." Defendant filed a Rule 23(f) petition for permission to appeal with the Eighth Circuit on September 29, 2021. Plaintiff filed an opposition to that petition. The Eighth Circuit denied the petition on November 16, 2021.

After the class was certified, the parties re-engaged in settlement talks. The parties engaged in extensive negotiations for several weeks. Before the terms were negotiated, Plaintiff had a thorough understanding of the composition of the class and the nature of Defendant's anticipated defenses. Plaintiff considered the logistical and technical challenges surrounding her claims and the Defendant's defenses, as well as the costs associated with taking the case to trial. Plaintiff analyzed the Class's alleged damages with the assistance of consulting experts.

In sum, this case has been vigorously prosecuted and defended. The parties exchanged thousands of documents during discovery and filed hundreds of pages of briefing and exhibits with the Court. Armed with the information gained during the discovery process, and informed by the Court's prior rulings, the parties understand the costs and

5

risks to both sides of proceeding to trial. The settlement they have arrived upon is better for the Class than the risks and expenses associated with continued litigation.

The parties have collaborated on the logistics and substance of the Notice Plan, and of the administration of this settlement. Counsel obtained bids from several well-established, experienced, highly regarded class action notice and administration firms. The economical and efficient administration of the Settlement is a necessity, given the number of Class Members and the damages involved. Plaintiff maximized the amount that would be available to the Class for payment of claims. Defendant agreed to cover the costs associated with the proposed notice and administration plan outlined in the Settlement Agreement. The plan the parties are proposing in the Settlement Agreement complies with all federal rules and with due process requirements, and is a material part of the settlement.

## II. The Proposed Settlement

The Court certified class consists of approximately 145,000 accountholders from the former Scottrade entity. In exchange for the Settlement's benefits, Class Members will release any claims arising out of the conduct by Scottrade alleged in the Complaint in this action.

The Settlement provides for a non-reversionary cash fund of $2,325,000.00. All Class Members are eligible for payment. They will receive a payment estimated to equal approximately 5.28% of the total amount of substitute payments they received from Scottrade during the Class Period. Any residual funds will be distributed to the Boys and Girls Clubs of America, a Section 501(c)(3) non-profit organization, for use in its financial literacy education programs.

The proposed Notice forms are attached to the Settlement Agreement as Exhibits B (Long Form Notice) and C (Summary Notice). A Summary Notice will be delivered via email or by postcard through U.S. mail to Class Members using the last known email or mailing

address associated with the account, or such updated address as the Settlement Administrator may identify. See Exhibit 1 (Settlement Agreement) at Section 4. A settlement website (www.BartleSettlement.com) will communicate all important information, deadlines, and the Long Form Notice. The website will have relevant motions, orders, and pleadings available for download.[2] Additionally, a toll-free number and email address will be made available for Class Members to contact the Settlement Administrator or Class Counsel directly.

The parties propose that Rust Consulting, an experienced and reputable national class action administrator, serve as Settlement Administrator, to provide notice, administer the opt-out and payment distribution processes, and provide other services necessary to implement the Settlement. Rust Consulting was selected after counsel considered proposals from various administrators. Under the proposed settlement, the costs of Notice in this matter will be borne by Defendant and will not be paid out of the cash fund for Class Members.

**III.    The Legal Standard**

"The law strongly favors settlements." *Little Rock Sch. Dist. v. Pulaski County Special Sch. District. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990); *see also Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor."). This preference is particularly strong "in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Cohn v.*

---

[2] The Petition, the Renewed Motion for Class Certification, and the Order Granting Certification will be available for download.

*Nelson*, 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)).

Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11:41; *see also Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015) ("A settlement agreement is 'presumptively valid.'") (quoting *In re Uponor, Inc., F1807 Plumbing Fittings Products Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). Moreover, the judgment of class counsel in entering into a proposed class settlement is an important consideration. *See e.g. Stephens v. U.S. Airways Group, Inc.*, 102 F. Supp. 3d 222, 229 (W.D. Mo. 2011); *Belllows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-0413, 2008 WL 5458986, *8 (S.D. Cal. Dec. 10, 2008) ("[I]t is the considered judgment of experienced counsel that this settlement is fair, reasonable, and adequate settlement of the litigation, which should be given great weight.")

Parties to a class action may settle the claims of a certified class only with court approval. Fed. R. Civ. P. 23(e). The Court can approve a class settlement if it finds that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The settlement approval process typically occurs in three phases. "Step one is a preliminary, pre-notification determination as to whether the proposed settlement is 'within the range of possible approval.' If the court grants preliminary approval, step two is sending notice to the class describing the terms of the proposed settlement, at which time 'class members are given an opportunity to object or, in Rule 23(b)(3) class actions, opt out of the settlement.' The court also holds a fairness hearing at which class members may appear and support or object to the settlement. At step three, the court decides whether to give final approval to the settlement, taking into account all of the information learned during the process."

*Komoroski v. Utility Service Partners Private Label, Inc.*, No. 4:16-cv-00294-DGK, 2017 WL 3261030 (W.D. Mo. July 31, 2017) (citing 4 Newberg on Class Actions 13:10).

Because preliminary approval is just the first step, courts apply a "less stringent" standard than at final approval. *Nieberding v. Barrette Outdoor Living, Inc.* 2015 WL 1645798, *4 (D. Kan. 2015). Pursuant to Rule 23(e)(1), the Court should preliminarily approve settlements when the moving party makes a showing that the court will likely be able to approve the proposal under Rule 23(e)(2).

### IV. The Settlement Satisfies Rule 23(e)

Under Rule 23(e)(2), the factors that a Court considers when determining whether it is likely to approve a settlement, are whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

This case satisfies the four factors set forth in Rule 23(e)(2), as set forth below, and the Court should therefore grant preliminary approval.

### a. The Class Representative and Class Counsel have adequately represented the Class

The Class Representative and Class Counsel have adequately represented the Class. In January 2020, Plaintiff brought the case on behalf of herself and others similarly situated, for the time period from January 23, 2010 through February 26, 2018.

The case was vigorously contested at every step of the process. To arrive at this settlement, the Plaintiff had to overcome two dispositive motions, a motion to reconsider one of those dispositive motions, multiple other non-dispositive motions, opposition to both the first and second class certification motions, and a Rule 23(f) petition to the Eighth Circuit. The briefing included complex questions of law about preemption, contract interpretation, statutes of limitation, and damages.

The discovery process included the production of thousands of documents, the deposition of Defendant's corporate representative under Fed. R. Civ. P. 30(b)(6), the depositions of two other former employees, and the depositions of Plaintiff and her husband. Plaintiff has actively participated in the litigation, responding to written discovery, and submitting to a deposition. Plaintiff is not seeking a service payment nor any additional compensation, other than what would be owed to any other class member.

### b. The settlement was negotiated at arm's length

The settlement was fairly and honestly negotiated. "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

Defendant disagreed with Plaintiffs' legal and factual positions at every step, including on several threshold issues such as preemption. Early efforts at resolution were unsuccessful. Mediation with an experienced mediator, Tom Bender, was unsuccessful, and

the parties stopped negotiations entirely until after the Court's class certification ruling. Only after the Court's ruling, and the Eighth Circuit's denial of Defendant's Rule 23(f) petition, were the parties able to agree on a settlement. Discussions regarding the proposed Settlement and its terms involved several weeks of back and forth negotiation. Defendant continues to assert that it is not subject to any liability, that Scottrade did not breach the Brokerage Account Agreement, and that Defendant has meritorious defenses that it believes would ultimately prevail at trial as to all of the claims asserted by the Class.

### c. The relief provided for the Class is adequate

This settlement provides significant relief to Class Members and compensates them fairly for their claims, particularly in light of the factors to be considered under Rule 23(e)(2)(C).

#### 1. The costs, risks, and delay of trial and appeal.

The parties naturally dispute the strength of Plaintiff's case, and the Settlement reflects the parties' compromise of their assessments of the worst-case and best-case scenarios, weighing the likelihood of various potential outcomes. Plaintiff believes a best case scenario is a recovery on the merits of several millions of dollars. Plaintiff's worst case scenario is that summary judgment is granted to Defendant or Plaintiff loses at trial, which would result in no recovery for the Class. Defendant has raised several defenses to the merits of the claims asserted in this action that create risk to the Class from further litigation, including whether the paragraph of the Brokerage Account Agreement at issue means what Plaintiff alleges, whether any potential difference in tax treatment that Class Members may have experienced amounts to a "loss" that "accrued" to a brokerage account, and whether Class Members have waived any alleged breach. Even if the case proceeded to trial and Plaintiff prevailed on the question of liability, substantial questions may remain as to the measure of damages and the entitlement of each Class Member to recover.

Further, several issues have been raised during the course of this action that could be subject to potential appeal.

Remaining discovery, summary judgment, trial, and appeal would consume significant resources. Plaintiff would spend money on the litigation notice, travel, expensive expert witnesses, and other litigation costs, which would be borne by the Class in any recovery.

Although Plaintiff believes strongly in the merits of the claims, the great number of uncertainties weigh in favor of a guaranteed resolution of the litigation. Settlement ensures that the Class will recover significant, immediate relief, for a substantial portion of their alleged losses, and compensation they may otherwise never receive.

### 2. The effectiveness of the proposed method of distributing relief to the class

The parties have agreed to retain Rust Consulting as Class Administrator. This company's qualifications and the proposed Notice Plan are outlined in the Declaration of James M. Parks on behalf of Rust Consulting, attached hereto as Exhibit 2.

Rust Consulting has extensive experience administering class actions, having serviced over 7,500 class action settlements, judgments, and similar administrative programs during its nearly 30-year history. *Id.* ¶ 3. Federal courts have entrusted Rust Consulting with administering nationwide settlement processes across the country.

For this case, the parties and the administrator have formulated a robust notice plan that encompasses several platforms, including email, U.S. Mail, and a website, designed to reach all Class Members through individual communications using last-known contact information obtained through what is, for most Class Members, an ongoing consumer relationship. This extensive notice plan is more than sufficient in a consumer class action like the instant case. *See, e.g.*, *In re Serzone Products Liability Litig.*, 231

F.R.D. 221, 236 (S.D. W.Va. 2005) (holding the notice plan designed to effectively reach approximately 80% of class members comports with the requirements of due process and Federal Rules of Civil Procedure 23(c)(2) and 23(e)); *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1061 (S.D. Tex. 2012) (approving a notice plan that was estimated to reach 81.4% of class members).

The Notice Plan will clearly inform Class Members of their rights to opt out or to object, and the mechanisms and deadlines for doing so, and will include all of the information required by Rule 23. The proposed Long-Form Notice is attached to the Settlement Agreement as Exhibit B for the Court's consideration. It contains all of the information required by Rule 23, and it closely tracks the model notice promulgated by the Federal Judicial Center ("FJC"), which is the education and research agency for the federal courts. Indeed, the FJC's illustrative notice that forms the basis for the proposed long-form notice in this case is recognized as the leading model for notice in class actions. *See, e.g., Varacallo v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 207, 224 (D.N.J. 2005); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 185 (S.D.N.Y. 2003).

### 3. The proposed attorney's fees

Pursuant to the Settlement Agreement, Defendant has agreed not to object to or oppose an application by Class Counsel for fees and expenses as long as the application does not exceed one third (33 1/3%) of the cash fund plus administrative expenses. The attorney fee award is scheduled to be distributed to Class Counsel within 30 days after the final approval of settlement and resolution of any appeal – only after all payments to Class Members have been determined, and any objections have been heard.

The Supreme Court has expressed a preference that parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461

U.S. 424, 437 (1983). Here, the parties have done so. When a settlement yields a common fund for class members, fees must be paid from recovery. *Boeing Co. v. Van Gemert*, 444 U.S 472, 481, 62 L. Ed. 2d 676, 100 S. Ct. 745 (1980). "In the Eighth Circuit, use of a percentage method of awarding attorneys' fees in a common fund case is not only approved, but also well established." *In re Xcel Energy, Inc. Sec. Derivative & ERISA Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005). Indeed, courts in this Circuit routinely approve and apply the "percentage-of-the-fund" approach in awarding attorneys' fees in common fund cases. *See, e.g., Johnson v. Comerica Mortg. Corp,* 83 F.3d 241, 245-47 (8th Cir. 1996) (approving the percentage method as one method of awarding fees); *Petrovic v. AMOCO Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *In re Xcel Energy*, 364 F. Supp. 2d at 1993.

As the Eighth Circuit has recognized, using a percent of the fund approach most closely aligns the interest of the lawyers with the class, since the more that is recovered for the class, the more attorneys stand to be paid. *See Johnston v. Comerica Mortgage Co.*, 83 F.3d 241, 244 (8th Cir. 1996) (noting that the percent of benefit approach has been recommended in common fund situations); *see also In re Charter Communications, Inc. Securities Litig.*, No. MDL1506, 02-1186, 2005 WL 4045741 (E.D. Mo. June 30, 2005); *In re BankAmerica Corp. Securities Litig.*, 228 F. Supp. 2d 1061, 1064 (E.D. Mo. 2002).

The amount sought by Class Counsel is well within the range approved by courts in the Eighth Circuit and in Missouri. "Courts in this Circuit and this District have frequently awarded attorney fees of 33 1/3% - 36% of a common fund." *Vogt v. State Farm Life Ins. Co.*, 2021 WL 247958 *2 (W.D. Mo. Jan. 25, 2021) (approving attorneys' fees equal to one-third of the common fund). *See also In re U.S. Bancorp Litig.*, 291 F.3d 1035,

1038 (8th Cir. 2002) (affirming fee award representing 36% of the settlement fund as reasonable); *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (describing an award of 38% as "on the high end of the typical range."); *Tussey v. ABB, Inc.*, No. 06-CV-04305-NKL, 2019 WL 3859763, at \*4, (approving $18,331,500 fee, equal to one-third of common fund); *Yarrington v. Solvay Pharm., Inc.*, 697 F. Supp. 2d 1057, 1064 (D. Minn. 2010) (finding $5,445,000 in attorneys' fees, representing 33% of settlement fund, to be in line with fees approved by Eighth Circuit).

Pursuant to the parties agreement, the common fund established for Class Members is $2.325 million. This settlement protects Class Members, and ensures an adequate recovery for each member. The costs of the settlement administration is estimated to be approximately $164,538, which as noted above will not be paid out of the common fund for Class Members and, if the costs of administration are higher than estimated, the recovery to Class Members will not be affected. It is appropriate for the Court to consider the costs of administration when calculating attorney fee awards. *In re Life Time Fitness, Inc., Telephone Consumer Protection Act (TCPA) Litigation v. Life Time Fitness, Inc.*, 847 F.3d 619, 623 (8th Cir. 2017) ("[T]he district court did not abuse its discretion by including approximately $750,000 in fund administration costs as part of the 'benefit' when calculating the percentage-of-the-benefit fee amount."). Therefore, Plaintiff will be applying for a class counsel award of $829,846, comprising one third (33 1/3%) of the common fund and estimated administrative expenses.

### 4. The proposal treats Class Members equitably

The proposed settlement provides each Class Member with an award that is calculated based on each Class Member's total substitute payments and an estimated difference in tax rates between substitute payments and qualified dividends for the overall class. The common fund of $2.325 million represents a significant recovery relative to the

maximum $4.2 million that Plaintiff estimates she could recover at trial under her "best case" scenario and takes into account the expenses of continued litigation and the risk that the class recovery could be much lower or zero if Defendant were to prevail at trial or on appeal. Pursuant to the settlement, the Net Settlement Fund will be distributed among all Class Members on a pro rata basis proportionate to the amount of substitute payments each Class Member received, and each class member's compensation is estimated to equal approximately 5.28% of the total substitute payments that the Class Member received during the Class Period.

Resolving this case on a percentage basis for each Class Member that takes into account the amount of substitute payments that each Class Member individually received is a great benefit to the Class. An alternative approach would require each Class Member to find and submit financial records and tax returns dating back to 2010. Many or most Class Members might find such an undertaking more time consuming and burdensome than it would be worth, given that the average claim amount for each individual Class Member based on the full value of the common fund would be approximately $15.88. Many Class Members might be unable to find or locate financial records for all or part of the time period in question. For those Class Members, even though they are otherwise similarly situated as other Class Members, recovery under such an alternative method might be difficult or impossible. The proposed settlement, which automatically provides Class Members with payments, does not require Class Members to submit claims, and does not depend on Class Members locating and submitting historical personal financial data, is more equitable, while allowing anyone who does not want to participate to opt out.

The Settlement treats Class Members consistently and fairly. No Class Members receive special treatment, including the Plaintiff who brought the lawsuit and is not asking for a service award.

16

### d. The experience and views of counsel

A court evaluating a proposed settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d. ed. 1997)). Although the Court is not bound by counsel's opinion, their opinion nonetheless carries weight in assessing a settlement. *Sanderson v. Unilever Supply Chain, Inc.*, 10- cv-00775- FJG, 2011 WL 5822413, at *3-4 (W.D. Mo. Nov. 16, 2011) (crediting experienced class counsel's belief that the settlement was fair, reasonable, and adequate).

In Class Counsel's view, the Settlement provides substantial benefits to the Class Members; benefits they likely would not have ever received had this case not been brought. Especially when one considers the risk, difficulties, delays, and uncertainties of litigation, trial and post-trial proceedings, Class Counsel's view is that the Settlement is an excellent outcome.

## VI. Conclusion

The Settlement presented is fair, reasonable, and adequate, given the legal hurdles that the Class still faces, and weighing the costs and benefits of continued litigation. Defendant has vigorously contested this case from the beginning, and although Plaintiff has overcome more than one dispositive motion based on the pleadings, were this case to proceed without settlement, Defendant believes that it would prevail on the merits, fully intends to assert its defenses to both liability and damages if the case cannot be resolved, and has raised several potential issues for appeal. Plaintiff respectfully requests that the

Court preliminarily approve the Settlement as provided in Exhibit 1, in whole and without delay. A proposed Order is submitted with this Motion for the Court's consideration.

Respectfully submitted,

By: /s/ Jared A. Rose
Jared A. Rose, MO Bar #60128
919 West 47th Street
Kansas City, Missouri 64112
Phone: (816) 221-4335
Fax:   (816) 873-5406
jared@roselawkc.com

*Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on March 18, 2022, I filed the foregoing document using the court's electronic filing system, which will serve notice on all parties of interest.

  /s/ Jared A. Rose